PEOPLE v SCLAFANI

Docket No. 60575. Submitted October 6, 1983, at Detroit.—Decided
    February 21, 1984. Leave to appeal applied for.

Andrew L. Sclafani was convicted of three counts of first-degree
    criminal sexual conduct, Wayne Circuit Court, William Leo
    Cahalan, J. The defendant appealed, alleging that his attorney
    committed a serious mistake when he advised the defendant to
    take a polygraph examination. *Held:*

Defense counsel's advice to the defendant constituted a mis-
    take serious enough to interfere with the defendant's chances
    of acquittal. The defendant's convictions should be reversed.
    The advice given by defense counsel was not based on trial
    strategy, but on a clear misunderstanding of the police proce-
    dures associated with the administration of polygraph examina-
    tions and with the subsequent use of the examination results.

Reversed and remanded.

Hood, J., concurred in the result only.

CRIMINAL LAW — ADVICE OF DEFENSE COUNSEL — POLYGRAPH EXAMI-
    NATIONS.

Generally, defense counsel's advice regarding the taking of a
    polygraph examination is a matter of trial strategy and the
    Court of Appeals will not substitute its judgment in such
    matters; however, where defense counsel's advice was based not
    on trial strategy but on a clear misunderstanding of the police
    procedures associated with the administration of polygraph
    examinations and with the subsequent use of the examination
    results, defense counsel made a mistake serious enough to
    interfere with the defendant's chances of acquittal and the
    defendant's conviction should be reversed.

REFERENCES FOR POINTS IN HEADNOTE

21A Am Jur 2d, Criminal Law § 984 *et seq.*

29 Am Jur 2d, Evidence § 831.

Admissibility of polygraph evidence at trial on issue of voluntari-
    ness of confession made by accused. 92 ALR3d 1317.

Admissibility of lie detector test taken upon stipulation that result
    will be admissible in evidence. 53 ALR3d 1005.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Andrea L. Solak,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Mardi Crawford),* for defendant on appeal.

Before: M. J. KELLY, P.J., and HOOD and SHEPHERD, JJ.

M. J. KELLY, P.J. Following a jury trial, defendant was convicted of three counts of first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2), and was sentenced to three concurrent terms of from 18 months to 5 years in prison. Defendant appeals his convictions as of right and raises several issues, one of which requires reversal.

Prior to trial, defendant sought and was granted a *Walker*[1] hearing to determine the voluntariness of a statement made by him to John Wojnaroski, a Michigan State Police polygraph operator. Defendant's attorney had scheduled a polygraph examination with the state police. When the defendant and his attorney appeared at the station for the examination, Officer Wojnaroski informed them that defendant would have to answer some "preparatory questions" unaccompanied by counsel. While alone with the defendant, Wojnaroski advised Sclafani of his *Miranda*[2] rights and proceeded to conduct a 54-minute interview, according

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

to Wojnaroski, or a two- to three-hour interview, according to defense counsel.

At some point, Officer Wojnaroski informed defendant that any information obtained in the "preparatory" interview "was going to be confidential and not disclosed to anybody". The entire interview was observed and heard by another officer through hidden equipment. Near the end of the interview, defendant admitted that he "may have" forced the complainant's consent, whereupon Wojnaroski terminated the interview, refusing to proceed with the polygraph examination because "the issue had been resolved" by the defendant's incriminating statement. A polygraph examination was never administered to the defendant. When defense counsel realized what had occurred, he advised the defendant that new counsel should be retained as he would likely have to testify at trial.

The trial court ruled that defendant had not properly understood the *Miranda* warnings. There were conflicting messages from Officer Wojnaroski to the defendant regarding confidentiality which tainted the inculpatory revelation that force was used. The court ruled that the statement was inadmissible as part of the prosecution's case in chief.

After defendant testified on direct examination that the complainant had consented to having sexual intercourse with him and his companion, the prosecutor impeached defendant on cross-examination with evidence of the "use of force" statement to Wojnaroski. Defendant denied various aspects of the statement and, over the defendant's objection, the prosecutor called Officer Wojnaroski to the stand for rebuttal.

Defendant contends on appeal that his original defense counsel committed a serious mistake when

he advised him to take a polygraph examination and that, but for this mistake, there was a great likelihood that he would not have been convicted. *People v Garcia,* 398 Mich 250, 264; 247 NW2d 547 (1976), *reh den* 399 Mich 1041 (1977). We agree that counsel made a serious mistake.

At the *Walker* hearing, the original defense counsel testified that the police never discussed with him the subject of *Miranda* warnings and that he was never informed that defendant's statements could later be used in court. Counsel further testified that his advice to defendant to take the polygraph examination was based on his experience with the exam in a previous case. This experience was limited, however, to private testing and defense counsel admitted that he was not familiar with police procedures, such as the practice of giving *Miranda* warnings, associated with the typical police-administered polygraph examination. Counsel testified:

"If I was there for the purpose of making statements that my client would be put in court on, I certainly wouldn't be going there, it *[sic]* certainly wouldn't be worth my salt as a lawyer. I had no idea that what I am *[sic]* going to do there is going to be used against my client. I went there for my client's benefit to represent him."

In this context defense counsel's advice to defendant constituted a mistake serious enough to interfere with defendant's chances of acquittal. In most instances, a defense attorney's advice regarding the taking of a polygraph examination is a matter of trial strategy and this Court will not substitute its judgment in such matters. *People v Burns,* 118 Mich App 242, 247; 324 NW2d 589 (1982); *People v Lotter,* 103 Mich App 386, 390; 302 NW2d 879

(1981), *lv den* 412 Mich 852 (1981). Here, however, the advice was based not on trial strategy, but on a clear misunderstanding of the police procedures associated with the administration of polygraph examinations and with the subsequent use of the examination results. Defense counsel admitted that had he realized the potential for impeachment by use of the defendant's statements he never would have advised his client to take the examination. Most persuasive of defense counsel's sincerity is his action in immediately withdrawing from the case in anticipation of being called as a witness in the future.

Because of our disposition of this issue, we find no need to address the defendant's remaining claims of error.

Reversed and remanded. In the event of a new trial, the statements made by defendant to Officer Wojnaroski are ordered suppressed.

HOOD, J., concurred in the result only.